**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **BRAD MOORE, et al.,** | |
| **Plaintiffs,** | |
| **v.** | **Case No. 15-4916-DDC-KGS** |
| **THE CLIMATE CORPORATION, et al.,** | |
| **Defendants.** | |

**MEMORANDUM AND ORDER**

This is an insurance coverage dispute.  Plaintiffs assert that defendants fraudulently induced them to purchase weather-based insurance policies and failed to make payment to plaintiffs under their respective insurance policies despite plaintiffs' demands.  This matter comes before the court on defendants The Climate Insurance Agency ("Climate Agency") and The Climate Corporation's ("Climate Corporation") Motion to Dismiss (Doc. 8) and defendant North American Elite Insurance Company's ("NAE Insurance") Motion to Dismiss (Doc. 10). Plaintiffs oppose defendants' motions (Docs. 20, 21), and alternatively, move for leave to amend their Complaint "to add additional facts and factual specificity."  Docs. 20 at 2, 21 at 2.  For the reasons explained below, the court grants defendants' motions in part and denies them in part. The court also grants plaintiffs leave to amend their Complaint consistent with this Memorandum and Order.

I.     **Factual Background**

The following facts are taken from plaintiffs' Complaint (Doc. 1).  The court accepts the facts asserted in the Complaint as true and views them in the light most favorable to plaintiffs.

*Burnett v. Mortgage Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013) (citing *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).

Plaintiffs consist of a Kansas corporation, a Nebraska corporation, and five individuals. Plaintiffs are agricultural producers who purchased weather-based insurance policies in 2013 from one or more defendants in anticipation of the 2013 growing season.

Plaintiffs bring this lawsuit against three defendants:  NAE Insurance, Climate Corporation, and Climate Agency.[1]  For the most part, plaintiffs refer to defendants, collectively, in the Complaint.  The Complaint asserts only three allegations that identify one of the defendants separately and specifically.  They are that:  (1) NAE Insurance developed the insurance policies at issue; (2) the insurance policies used weather modeling developed by Climate Corporation; and (3) Climate Agency is a wholly-owned subsidiary of Climate Corporation.  Doc. 1 at ¶¶ 10, 13.  Otherwise, plaintiffs assert they "have no specific knowledge about the interrelationship between defendants."  *Id.* at ¶ 13.

Plaintiffs allege that defendants made specific representations about the insurance policies including:  (1) the policies and the modeling which the policies were based on were improved from the 2012 policy and modeling in such a way that the agricultural producers would benefit; (2) the policies were designed to cover simply the absence, excess, or timing of weather conditions such as moisture, heat, and wind; (3) the policies were designed to provide coverage for losses in excess of the typical input cost covered by Federal Crop Insurance, to ensure the existence of an average yield; (4) no adjustor was needed because the new, improved modeling would identify losses precisely and the policies would compensate plaintiffs promptly if the weather conditions were adverse; and (5) the policies were the safest way to ensure an acceptable

---

[1]     Plaintiffs also named Monsanto Company as a defendant but later moved to dismiss it from the lawsuit without prejudice.  *See* Doc. 19.  The court granted that motion and dismissed Monsanto Company from the case without prejudice.  *See* Doc. 26.

production season allowing plaintiffs to service their debt, take care of their families, and avoid weather risks.  Plaintiffs relied on defendants' representations when deciding to purchase their respective insurance policies.

The weather-based insurance policies were payable on the absence, excess, or timing of certain weather conditions such as moisture, heat, and wind, without requiring a showing of an actual, demonstrable loss of yield on the insured's part.

In 2013, plaintiffs' real property and crops, insured by the weather-based insurance policies, experienced catastrophic drought conditions.  Plaintiffs allege that the insurance policies covered the drought conditions, and thus obligated defendants to pay plaintiffs the amount of the aggregate coverage of their individual insurance policies.  Plaintiffs filed claims under their respective insurance policies, but defendants failed to make the full payments owed to plaintiffs under the policies.

On July 31, 2015, plaintiffs filed their Complaint in this lawsuit.  It asserts eight claims against defendants:  (1) breach of contract; (2) breach of express warranty; (3) unjust enrichment; (4) bad faith; (5) fraudulent inducement; (6) fraudulent misrepresentation; (7) deceptive trade practices in violation of the Kansas Consumer Protection Act ("KCPA"); and (8) negligence.

Defendants move to dismiss plaintiffs' claims under Fed. R. Civ. P. 12(b)(6) for failing to state a claim upon which relief can be granted and Fed. R. Civ. P. 9(b) for failing to plead fraud with particularity.  Plaintiffs oppose defendants' motion, asserting that their Complaint pleads their claims against defendants sufficiently.  But, in the alternative, plaintiffs request leave to amend their Complaint if the court grants defendants' motions in whole or in part.[2]

---

[2]     Plaintiffs have not submitted a proposed amended Complaint, however, as D. Kan. Rule 15.1(a)(2) requires when a party seeks leave to file an amended pleading.

## II.     Legal Standard

### A.  Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6)

Fed. R. Civ. P. 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Although this Rule "does not require 'detailed factual allegations,'" it demands more than "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" which, as the Supreme Court explained, "will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"To survive a motion to dismiss [under Fed. R. Civ. P. 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  "Under this standard, 'the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims.'" *Carter v. United States*, 667 F. Supp. 2d 1259, 1262 (D. Kan. 2009) (quoting *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007)).

Although the court must assume that the factual allegations in the complaint are true, it is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* at 1263 (quoting *Iqbal*, 556 U.S. at 678).  "'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice'" to state a claim for relief. *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).

When evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court may consider "not only the complaint itself, but also attached exhibits and documents incorporated into the complaint by reference." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *TMJ Implants, Inc. v. Aetna, Inc.*, 498 F.3d 1175, 1180 (10th Cir. 2007); *Indus. Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 964–65 (10th Cir. 1994)).  A court "'may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.'"  *Id.* (quoting *Alvarado v. KOB–TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007)).

### B.  Motion to Dismiss Under Fed. R. Civ. P. 9(b)

When "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  The rule's purpose "is 'to ensure that the complaint provides the minimum degree of detail necessary to begin a competent defense.'" *Fulghum v. Embarq Corp.*, 785 F.3d 395, 416 (10th Cir. 2015) (quoting *McCarthy v. Ameritech Pub., Inc.*, 763 F.3d 469, 478 n.2 (6th Cir. 2014)).

A fraud claim "must 'set forth the time, place and contents of the false representation, the identity of the party making the false statements[,] and the consequences thereof.'"  *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997) (quoting *Lawrence Nat'l Bank v. Edmonds*, 924 F.2d 176, 180 (10th Cir. 1991)).  But the rule also allows a party to assert general allegations of "[m]alice, intent, knowledge, and other conditions of a person's mind." Fed. R. Civ. P. 9(b); *see also Schwartz*, 124 F.3d at 1252 (explaining that "Rule 9(b) requires only the identification of the circumstances constituting fraud, and that it does not require any particularity in connection with an averment of intent, knowledge or condition of mind" (citation

omitted)).  And "[a]llegations of fraud may be based on information and belief when the facts in question are peculiarly within the opposing party's knowledge and the complaint sets forth the factual basis for the plaintiff's belief."  *Scheidt v. Klein*, 956 F.2d 963, 967 (10th Cir. 1992) (citations omitted).

### III.    Analysis

Defendants generally assert three arguments to support their motions to dismiss plaintiffs' Complaint:  (1) plaintiffs' "shotgun" or "kitchen sink" allegations against defendants, collectively, fail to satisfy the pleading requirements of Fed. R. Civ. P. 8; (2) each cause of action asserted by the Complaint fails to state a claim against defendants and so Fed. R. Civ. P. 12(b)(6) requires dismissal; and (3) plaintiffs fail to plead their fraud-based claims with particularity as Fed. R. Civ. P. 9(b) requires.  The court addresses each argument, in turn, below.

### A.  Plaintiffs' "Shotgun" or "Kitchen Sink" Allegations

Defendants assert that the court should dismiss plaintiffs' Complaint in its entirety because it fails to identify the alleged conduct of each defendant separately.  Instead, the Complaint asserts allegations against all defendants generally.  Defendants argue that these general allegations fail to provide notice of the factual nature of the claims plaintiffs assert against them, thus violating Fed. R. Civ. P. 8(a).  While this rule only requires "'a short and plain statement of the claim showing that the pleader is entitled to relief,'" a complaint still must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Twombly*, 550 U.S. at 555 (first quoting Fed. R. Civ. P. 8(a); then quoting *Conley v. Gibson*, 355 U.S. 41, 147 (1957)).  Defendants contend that plaintiffs' general allegations against all defendants fail to satisfy the Fed. R. Civ. P. 8(a) pleading standard.

6

The court agrees.  Plaintiffs' allegations are insufficient to place each defendant on notice of the factual base for their claims.  The only individual references to defendants are the assertions that:  (1) NAE Insurance developed the insurance policies; (2) the policies use weather modeling developed by Climate Corporation; and (3) Climate Agency is a wholly owned subsidiary of Climate Corporation.  Doc. 1 at ¶¶ 10, 13.  Otherwise, plaintiffs' Complaint refers to all defendants generally, attributing their conduct to them as a collective group.

Our court has described these types of general allegations as "shotgun" or "kitchen sink" allegations "in which a plaintiff brings every conceivable claim against every conceivable defendant."  *D.J. Young Publ'g Co., LLC ex rel. Young v. Unified Gov't of Wyandotte Cty.*, No. 12-CV-2011-KHV, 2012 WL 4211669, at *3 (D. Kan. Sept. 18, 2012) (quoting *Gurman v. Metro. Hous. & Redev. Auth.*, 842 F. Supp. 2d 1151, 1153 (D. Minn. 2011)).  Such allegations "unfairly . . . shift[ ] onto the defendant and the court the burden of identifying the plaintiff's genuine claims and determining which of those claims might have legal support."  *Id.* (quoting *Gurman*, 842 F. Supp. 2d at 1153).

Plaintiffs respond that they have provided sufficient factual detail based on the information they possess currently.  Plaintiffs have pleaded that they "have no specific knowledge about the interrelationship between defendants."  Doc. 1 at ¶ 13.  And plaintiffs assert that they need discovery to gather additional facts about the specific conduct of each defendant.  But plaintiffs' need for discovery does not relieve them of their obligation to assert a sufficient factual basis to support their claims against each defendant at the outset of the case.[3]  *See Jensen*

---

[3]      Defendants question whether the Complaint violates Fed. R. Civ. P. 11, which requires an attorney who presents a pleading to the court to certify that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."  Fed. R. Civ. P. 11(b)(3).  Defendants do not seek monetary sanctions under Rule 11, however.  Docs. 22 at 5, 23 at 5.  Instead, defendants assert that the "Rule 11

*v. Am.'s Wholesale Lender*, 425 F. App'x 761, 764 (10th Cir. 2011) (rejecting plaintiffs'

argument that they "could establish their . . . claim with discovery" because "our pleading

standard 'does not unlock the doors of discovery for a plaintiff armed with nothing more than

conclusions.'" (quoting *Iqbal*, 556 U.S. at 678–79)); *see also Brown v. Ameriprise Fin. Servs.,

Inc.*, 276 F.R.D. 599, 605 (D. Minn. 2011) (explaining that a plaintiff must plead a claim

adequately before obtaining discovery, "not the other way around" (citation omitted and internal

quotation marks omitted)).

Plaintiffs' purported lack of knowledge also does not excuse their failure to plead specific

facts that they currently possess or could ascertain with some investigation.  Plaintiffs have

copies of the insurance policies at issue here,[4] and they should have first-hand knowledge of each

defendant's alleged actions directed at them.  Plaintiffs try to avoid this obligation by asserting

that the "group publication" doctrine excuses them from stating specific allegations against each

defendant because the insurance policies bear both the names of Climate Corporation and NAE

Insurance and thus constitute a "group published" document.  But the cases they cite as support

for this argument apply only when a complaint tries to hold individual corporate insiders liable

for fraudulent statements made in group-published corporate documents.  *See*, *e.g.*, *Schwartz v.

Celestial Seasonings, Inc.*, 124 F.3d 1246, 1254 (10th Cir. 1997) (rejecting the argument that a

complaint's failure to identify individual sources of statements violated Fed. R. Civ. P. 9(b)

because that "is unnecessary when the fraud allegations arise from misstatements or omissions in

group-published documents such as annual reports, which presumably involve collective actions

of corporate directors or officers"); *Touchstone Group LLC v. Rink*, 913 F. Supp. 2d 1063, 1079

---

issues" strongly favor dismissal of plaintiffs' Complaint with prejudice and without leave to amend.  The
court disagrees for the reasons explained by this Memorandum and Order.

[4]     Indeed, plaintiffs have attached the declarations to the Complaint.  *See* Docs. 1-1 to 1-11.

(D. Colo. 2012) (holding that the "group publication" doctrine applies when "a corporation's directors and officers publish a false statement collectively"); *see also Turney v. Dz Bank AG Deutsche Zentral Genossenschaftsbank*, No. 09-2533-JWL, 2010 WL 3735757, at *5 (D. Kan. Sept. 20, 2010) (holding the Tenth Circuit's decision in *Schwartz* did not apply when "plaintiffs have not alleged a fraud based on statements in an annual report or similar corporate document").

The insurance policies at issue here are not group-published corporate documents containing statements attributable to corporate insiders. The cases plaintiffs cite thus do not apply here, and the "group publication" doctrine does not permit plaintiffs to avoid identifying the specific conduct by each defendant that gives rise to plaintiffs' claims.

Despite the shortcomings presented by plaintiffs' general allegations, the court declines to dismiss the Complaint in its entirety on this basis. Instead, the court addresses the individual claims below determining whether plaintiffs have alleged a sufficient factual basis to state a plausible claim and, where appropriate, granting plaintiffs leave to amend to cure the deficiencies in the current pleading.

### B.  Plaintiffs' Failure to State a Claim for the Individual Legal Claims

Defendants next assert that plaintiffs' Complaint fails to state plausible claims for each of the individual causes of action asserted. The court addresses each cause of action in the following sections.

### 1.  Breach of Contract

Plaintiffs bring a breach of contract claim against defendants. The claim asserts that the insurance policies are written contracts between plaintiffs and defendants and that the policies obligated defendants to pay plaintiffs an amount up to the aggregate coverage limits "upon the absence, excess, or timing of certain weather conditions such as moisture, heat, and wind, and

without any requirement of an actual, demonstrable loss of yield . . . ." Doc. 1 at ¶¶ 35, 38. In Kansas,[5] a breach of contract claim requires: "(1) the existence of a contract between the parties; (2) sufficient consideration to support the contract; (3) the plaintiff's performance or willingness to perform in compliance with the contract; (4) the defendant's breach of the contract; and (5) damages to the plaintiff caused by the breach." *Stechschulte v. Jennings*, 298 P.3d 1083, 1098 (Kan. 2013) (citations omitted).

Climate Corporation and Climate Agency assert that plaintiffs have not alleged they were parties to a contract sufficient to state a breach of contract claim against them. Indeed, the Complaint credits NAE Insurance with developing the insurance policies using Climate Corporation's weather modeling. Doc. 1 at ¶ 13. But it does not identify Climate Corporation as a party to the insurance policies. It also does not state that Climate Agency was a party to the contracts; instead, it only identifies Climate Agency as a wholly owned subsidiary of Climate Corporation. *Id.* at ¶ 10. Plaintiffs respond that their general allegations against all defendants suffice to state a claim. The court disagrees. Plaintiffs' general allegations neither differentiate between defendants nor provide sufficient factual support for the assertion that Climate Corporation and Climate Agency were parties to the insurance policies.

Plaintiffs also argue that the Complaint reflects sufficiently the parties to the contracts because the insurance policies attached to the pleading contain Climate Corporation's logo. But the presence of a corporate logo on an insurance policy, without more, does not make the corporation a party to the contract. *See, e.g., Habecker v. Peerless Ins. Co.*, No. 1:07-CV-0196, 2008 WL 4922529, at *7 n.11 (M.D. Pa. Nov. 14, 2008) (granting summary judgment for an insurance company named in the heading of the insurance policy next to a logo because it was

---

[5]     The parties agree that Kansas law governs the claims in this diversity action. *See, e.g., Dish Network Corp. v. Arrowhead Indem. Co.*, 772 F.3d 856, 867 (10th Cir. 2014) (explaining that the substantive law of forum state governs analysis in diversity claims (citation omitted)).

"not identified as the policy's issuer, and plaintiffs [had] not described what, if any corporate relationship existed" between the companies and "[t]he record was devoid of any act performed by [the company] that deprived plaintiffs of coverage"); *Walsh v. Maryland, Bank, N.A.*, No. 91 Civ. 7483(CSH), 1994 WL 132234, at *2 (S.D.N.Y. Apr. 14, 1994) (granting summary judgment against plaintiff's breach of contract claim against MasterCard because it was not a party to the contract although its logo appeared on it). And, even if the presence of Climate Corporation's logo was sufficient, the Complaint still fails to state that Climate Agency was a party to the contract.

Also, all defendants argue that plaintiffs' Complaint merely recites the elements of the claim but fails to include a sufficient factual basis to state a plausible breach of contract claim. Specifically, defendants contend that plaintiffs have failed to cite a particular contractual requirement or provision breached. The court agrees that plaintiffs' general reference to a breach of the policies without specific identification of the contractual provisions that allegedly support the claim fails to put defendants on notice of the claim and thus fails to state a claim for relief. *See*, *e.g.*, *Shah v. Wilco Sys., Inc.*, 126 F. Supp. 2d 641, 653 (S.D.N.Y. 2000) (holding that plaintiff failed to provide defendant notice of the contractual provision allegedly breached or the nature of the breach and thus failed to state a breach of contract claim). Here, plaintiffs do not allege that certain provisions in the policies required defendants to make payment upon specific weather-related events or measurements. They also assert no facts stating that defendants failed to follow the mathematical formulas recited in the policies for determining payment. Without such factual assertions, plaintiffs fail to state a plausible claim for breach of contract.

The court nevertheless grants plaintiffs leave to amend their Complaint because plaintiffs could cure the pleading deficiencies if given the opportunity to amend. And our federal rules

require courts to "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).  The court thus grants plaintiffs leave to file an amended Complaint to include all necessary factual allegations to state a plausible breach of contract claim.

### 2.   Breach of Express Warranty

Plaintiffs next assert a breach of express warranty claim against defendants.  In support of the claim, plaintiffs allege that the parties formed a contract with terms that "include the promises and affirmations of fact made by the Defendants through their advertising, marketing and informational meetings" which "constitute express warranties."  Doc. 1 at ¶ 44.  Plaintiffs claim that they reasonably relied on defendants' express warranties in purchasing their respective insurance policies.  *Id.* at ¶ 46.  And they allege that defendants have breached the express warranties.  *Id.* at ¶ 47.

Defendants again argue that plaintiffs' general allegations do not suffice to state a claim.  Specifically, defendants assert that plaintiffs' breach of warranty claim fails because the Complaint does not identify any representation made by a particular defendant.  In addition, defendants argue the court must dismiss plaintiffs' breach of warranty claim because plaintiffs specifically disclaimed warranties in the insurance policies.

The policies include the following provision:

> Entire Agreement.  This **Policy** (as defined above) constitutes the entire agreement and understanding of the parties with respect to its subject matter.  Each of the parties acknowledges that in entering into this **Policy**, it has not relied on any oral or written representation, warranty or other assurance.  This **Policy** may only be amended by a written document duly executed by both **You** and **Us**.

Docs. 9-1 at 220, 11-1 at 220.[6]  When applying Kansas law, courts have enforced contractual

provisions disclaiming warranties, such as this one, if the parties clearly intended to finalize their

agreement in one writing.  *Ray Martin Painting, Inc. v. Ameron, Inc.*, 638 F. Supp. 768, 774 (D.

Kan. 1986) (applying Kansas law and holding that plaintiff's express warranty claim failed as a

matter of law because it was inconsistent with the contract's integration clause disclaiming

warranties).

    Here, plaintiffs assert that questions of fact exist that prevent the court from dismissing

the breach of express warranty claim—including whether plaintiffs read the policies, saw the

disclaimers, and understood them.  But that Complaint contains no allegations that the parties did

not intend to express their agreement in one, finalized writing—in this case, the insurance

policies.  Nor do they deny that they received the warranty disclaimers that the policies contain.[7]

And they assert breach of contract claims relying on the very policies that contain the integration

clause with the express disclaimers.

    Our court has dismissed breach of warranty claims under similar circumstances when a

party has disclaimed warranties in a written contract.  *See Orica New Zealand Ltd. v. Searles

Valley Minerals Operations Inc.*, No. Civ. A. 04-2310-KHV, 2005 WL 387659, at *3 (D. Kan.

2005) (dismissing claim for breach of implied warranty of merchantability for failing to state a

claim under Fed. R. Civ. P. 12(b)(6) because the parties' contact contained an implied warranty

disclaimer).  *See also BHC Dev., L.C. v. Bally Gaming, Inc.*, No. 12-2393-KHV, 2013 WL

---

[6]    Defendants have submitted a copy of one plaintiff's insurance policy to their motions to dismiss.
*See* Docs. 9-1, 11-1.  Plaintiffs do not dispute the authenticity of the submitted insurance policy or claim
that the other plaintiffs' policies differed from the one submitted to the court.  The court may consider the
insurance policy when deciding the motion to dismiss because it is a document incorporated into the
Complaint by reference, it is central to plaintiffs' claim, and the parties do not dispute its authenticity.
*Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (citations omitted).

[7]    Plaintiffs never argue that the disclaimer was inconspicuous.  They only assert that fact issues
exist whether plaintiffs saw the disclaimer in the contract.

6261430, at *9 (D. Kan. Dec. 4, 2013) (granting summary judgment against express warranty claim because the contract disclaimed all warranties and contained a merger clause providing that the agreement constituted the entire understanding and contract between the parties); *Ray Martin Painting, Inc.*, 638 F. Supp. at 774 (dismissing claim for breach of express warranty and observing that "allowing plaintiff to base an express warranty claim on language not present in the contract would be inconsistent with the integration clause"); *Jordan v. Doonan Truck & Equip., Inc.*, 552 P.2d 881, 884 (Kan. 1976) (holding that the parole evidence rule barred plaintiff's breach of express warranty claim because the contract contained a warranty disclaimer and the parties intended the contract to serve as the final expression of their agreement).  The analysis applied in these cases convinces the court to dismiss plaintiffs' breach of express warranty claim for failing to state a claim under Fed. R. Civ. P. 12(b)(6).

### 3.  Unjust Enrichment

Plaintiffs assert an unjust enrichment claim "in the alternative . . . to the extent the contract and express warranties do not govern the entirety of the subject matter of the dispute." Doc. 1 at ¶ 50.  Defendants argue that plaintiffs' unjust enrichment claim is duplicative of their breach of contract claim.  And thus, defendants contend, the court should dismiss this claim.

The court agrees that Kansas law precludes an unjust enrichment claim when a valid written contract exists between the parties.  "Kansas law is clear that quasi-contractual remedies, such as unjust enrichment, are not to be created when an enforceable express contract regulates the relations of the parties with respect to the disputed issue."  *Ice Corp. v. Hamilton Sundstrand Inc.*, 444 F. Supp. 2d 1165, 1171 (D. Kan. 2006) (citations and internal quotation marks omitted).  And our court has dismissed unjust enrichment claims when the parties do not dispute the existence of a written contract that governs the controversy.  *See Orica New Zealand Ltd.*,

2005 WL 387659, at *3 (dismissing plaintiff's unjust enrichment claim after defendant stipulated that it was bound by the parties' written contract); *see also Fusion, Inc. v. Neb. Aluminum Castings, Inc.*, 934 F. Supp. 1270, 1275 (D. Kan. 1996) (dismissing a restitution claim because the parties agreed that a written contract existed, and the written contract governed the dispute).

But, unlike those cases, the parties here have not stipulated to the existence of an enforceable contract between plaintiffs and each defendant.  So plaintiffs may plead an unjust enrichment claim as an alternative to their breach of contract claim.  *See Ice Corp.*, 444 F. Supp. 2d at 1171 (denying motion to dismiss alternative unjust enrichment claim until it was clear that an express contract existed precluding the alternative theory).  Indeed, the federal rules authorize a party to plead "relief in the alternative or different types of relief."  Fed. R. Civ. P. 8(a)(3).  The rules also allow a party to "set out 2 or more statements of a claim or defense, alternatively or hypothetically, either in a single count or defense or in separate ones."  Fed. R. Civ. P. 8(e)(2). Consistent with the Federal Rules, plaintiffs may assert their unjust enrichment claim as an alternative theory of relief.  The court denies defendants' motion to dismiss plaintiffs' unjust enrichment claim.

But the court orders plaintiffs to supplement their allegations with additional requisite facts that, if proven true, would support their unjust enrichment claim against each defendant.  Specifically, plaintiffs must include facts showing the particular conduct of each defendant that allegedly supports their unjust enrichment claim.  The courts grants plaintiffs leave to file an amended Complaint that complies with this directive.

### 4. Bad Faith

Plaintiffs next assert a tort claim for bad faith.  Defendants argue that the court must dismiss this claim because Kansas does not recognize bad faith tort claims.  Defendants are

correct.  The Kansas Supreme Court has refused to recognize tort actions for bad faith in the context of a first party insurance claim.  *See Associated Wholesale Grocers, Inc. v. Americold Corp.*, 934 P.2d 65, 89 (Kan. 1997); *Spencer v. Aetna Life & Cas. Ins. Co.*, 611 P.2d 149, 158 (Kan. 1980); *see also Osgood v. State Farm Mut. Auto. Ins. Co.*, 848 F.2d 141, 144 (10th Cir. 1988) (explaining that "Kansas law does not recognize the tort of bad faith in the context of 'first party' litigation against insurance companies").

Plaintiffs respond that their bad faith claim actually is one asserting breach of the duty of good faith and fair dealing.  Kansas law recognizes such a claim because "in Kansas, insurance policies are typically considered contracts, and Kansas law implies a duty of good faith and fair dealing in every contract."  *H & L Assocs. of Kansas City, LLC v. Midwestern Indem. Co.*, No. 12–2713–EFM, 2013 WL 3854484, at *3 (D. Kan. July 25, 2013) (first citing *Aves ex rel. Aves v. Shah*, 906 P.2d 642, 648 (Kan. 1995); then citing *Howard v. Ferrellgas Partners, L.P.*, No. 10-2555-JTM, 2011 WL 3299689, at *6 (D. Kan. Aug. 1, 2011)).  To assert a cause of action for breach of a duty of good faith and fair dealing, a plaintiff must: "(1) plead a cause of action for 'breach of contract,' not a separate cause of action for 'breach of duty of good faith,' and (2) point to a term in the contract 'which the defendant allegedly violated by failing to abide by the good faith spirit of that term.'"  *Wayman v. Amoco Oil Co.*, 923 F. Supp. 1322, 1359 (D. Kan. 1996) (quoting *Pizza Mgmt., Inc. v. Pizza Hut, Inc.*, 737 F. Supp. 1154, 1184 (D. Kan. 1990)).  The court analyzes plaintiffs' allegations under this standard to determine whether they state a valid claim for breach of a duty of good faith and fair dealing under Kansas law.

Plaintiffs' Complaint asserts that defendants owed plaintiffs "a duty to make a good faith investigation of the facts surrounding Plaintiffs' claims and to pay Plaintiffs' claims absent a bona fide and reasonable factual ground for contesting said claims."  Doc. 1 at ¶ 57.  Plaintiffs

allege that defendants "breached their duty to the Plaintiffs, and each of them, and have refused without just cause or excuse to pay the full amount of Plaintiffs' losses." *Id.* at ¶ 58. Plaintiffs' current allegations fail to identify a contract term that defendants allegedly violated by failing to abide by the good faith spirit of that term. But, to the extent plaintiffs could identify a specific contract term that each defendant allegedly has violated by failing to make full payment to plaintiffs in good faith spirit of the contract term, they may be able to state a plausible claim for relief. The court grants plaintiffs leave to amend their Complaint to assert a sufficient factual basis for a breach of the duty of good faith and fair dealing against each defendant, identifying the specific contract provision and conduct by each defendant that allegedly supports their claim.

### 5. Kansas Consumer Protection Act ("KCPA") Claims

Plaintiffs assert a claim for deceptive trade practices in violation of the KCPA, Kan. Stat. Ann. § 50-623 *et seq.* Defendants argue that the court should dismiss this claim because: (1) plaintiffs have failed to plead the claim with particularity as Fed. R. Civ. P. 9(b) requires; and (2) plaintiffs fail to state a claim because the KCPA does not apply to the insurance contracts at issue.

Because the court agrees with the second basis for dismissal, the court need not address the first. The Kansas legislature enacted the KCPA "to protect consumers from suppliers who commit deceptive and unconscionable acts . . . ." *Bailey v. Morgan Drive-Away, Inc.*, 647 F. Supp. 648, 655 (D. Kan. 1986). The Act requires courts to construe its provisions liberally to promote this policy. Kan. Stat. Ann. § 50–623(b).

The KCPA prohibits deceptive acts or practices "in connection with a consumer transaction." Kan. Stat. Ann. § 50-626(a). The KCPA defines a "consumer transaction" as a "sale, lease, assignment or other disposition for value of property or services within this state

(*except insurance contracts regulated under state law*).”  Kan. Stat. Ann. § 50-624(c) (emphasis

added).  The statute specifically excludes insurance contracts from KCPA coverage.  *See State ex*

*rel. Stephan v. Brotherhood Bank and Trust Co.*, 649 P.2d 419, 422 (Kan. Ct. App. 1982)

(explaining that “the terms and definitions of the KCPA are all very broad with the exception of

the specific exclusion of insurance contracts”).

Plaintiffs’ Complaint asserts that defendants “in marketing, promoting, and selling their

policies of insurance to Plaintiffs . . . engaged in deceptive trade practices.”  Doc. 1 at ¶ 78.  And,

in their response to defendants’ motion, plaintiffs “concede that the contracts at issue in this case

are ostensibly insurance contracts.”  Docs. 20 at 17, 21 at 17.  But plaintiffs argue that they have

pleaded their KCPA claim as an alternative theory in the event that the insurance contracts are

deemed invalid or unenforceable.  Plaintiffs do not cite and the court has not located any case

allowing a party to plead a KCPA claim in the alternative in case an insurance contract is

unenforceable.

While the KCPA requires liberal construction, the court cannot stretch the KCPA to make

it reach as far as plaintiffs propose.  Plaintiffs’ Complaint defines the KCPA claim.  It bases the

KCPA claim on defendants’ sale of insurance policies to plaintiff.  *See* Doc. 1 at ¶ 78.  It alleges

no facts suggesting that defendants sold plaintiffs anything other than insurance policies.

Because the KCPA specifically exempts insurance contracts from statutory coverage, plaintiffs

have failed to state a claim for relief under the KCPA.  The court dismisses the KCPA claim with

prejudice.

### 6.  Negligence

Plaintiffs bring a negligence claim against defendants alleging that defendants “made

certain representations of fact and promises” and thus “owed a duty to develop and utilize

18

weather modeling, upon which the policies of insurance at issue in this case were based, which would permit the policies of insurance to perform as advertised and promised, and to develop policies of insurance consistent with the underlying weather modeling and capable of performing as advertised and promised." Doc. 1 at ¶ 83. Plaintiffs allege that defendant breached this duty and thus are liable for negligence. *Id.* at ¶ 84.

Defendants assert that plaintiffs' negligence claim is duplicative of their breach of contract claim. They argue that plaintiffs rely on the same set of facts to support both claims and that any alleged duty that defendants owed to plaintiffs arises from their contracts, not an independent duty apart from the contracts. Defendants contend that Kansas law bars tort claims when a contract covers the same subject matter and precludes plaintiffs from repackaging their breach of contract claim as a tort claim.

The court agrees with defendants' description of Kansas law. As our court has explained, "When parties contemplate a remedy in the event of a breach of contract, the bargained-for existence of a contractual remedy displaces the imposition of tort duties and default consequences." *Universal Premium Acceptance Corp. v. Oxford Bank & Trust*, 277 F. Supp. 2d 1120, 1129 (D. Kan. 2003). But despite this rule, "a party may be liable in tort for breaching an independent duty toward another, even where the relationship creating such a duty originates in the parties' contract." *Id.* at 1129–30. One such independent duty is the duty to avoid mispresenting preexisting or present facts. *See id.* at 1130 (explaining that "a misrepresentation claim must 'relate to preexisting or present fact; statements, or promises about only future occurrences are not actionable.'" (citing *Graphic Techs., Inc. v. Pitney Bowes, Inc.*, 998 F. Supp. 1174, 1179–1180 (D. Kan. 1998) (further citation omitted)).

Also, the Kansas Supreme Court has allowed litigants to assert contract and tort claims based on the same set of facts. *See Burcham v. Unison Bancorp, Inc.*, 77 P.3d 130, 145–46 (Kan. 2003); *Bittel v. Farm Credit Servs. of Cent. Kan.*, 962 P.2d 491, 498 (Kan. 1998). It has held that "'when the same conduct could satisfy the elements of both a breach of contract or of an independent tort, unless the conduct is permitted by the express provisions of a contract, a plaintiff may pursue both remedies.'" *Burcham*, 77 P.3d at 145 (quoting *Bittel*, 962 P.2d at 498).

Applying this line of cases, plaintiffs may assert a negligence claim on top of their breach of contract claim because they allege defendants violated a duty independent of the contract. Liberally construing the Complaint, plaintiffs allege that defendants breached their duty to refrain from misrepresenting present or preexisting facts when the parties entered into the insurance policies. Defendants cite no provision of the contract that authorizes this alleged conduct or limits plaintiffs' ability to pursue a tort claim under this theory. *See Burcham*, 77 P.3d at 145 (explaining that a plaintiff may assert both contract and tort claims "unless the conduct is permitted by the express provisions of a contract" (citation and internal quotation marks omitted)).

Moreover, the cases defendants cite as support for their motion are distinguishable from the facts alleged here because those cases involved tort claims arising from defendants' contractual duties, not an independent duty. *See, e.g.*, *Smith v. Hawkeye-Security Ins. Co.*, 842 F. Supp. 1373, 1375 (D. Kan. 1994) (holding that plaintiff's tort claims were based on defendants' alleged failure to advise plaintiff of his contractual rights under the contract and these facts were not independent from his breach of contract claim); *Louisburg Bldg. & Dev. Co., LLC v. Albright*, 252 P.3d 597, 623 (Kan. Ct. App. 2011) (concluding that plaintiffs could not assert a

fraudulent inducement claim when they were simply trying to enforce the contract terms through a fraud claim).

The court thus concludes that plaintiffs may plead alternative claims for negligence and breach of contract. *See Shields v. U.S. Bank*, No. Civ. A. 05-2073-CM, 2005 WL 3335099, at *2 (D. Kan. Dec. 7, 2005) (concluding that, although the court would not permit plaintiff to make a double recovery, plaintiff could plead alternative claims for negligence and breach of contract). But, even though plaintiffs may assert these alternative theories, their current pleading falls short of its pleading duty. It does not provide sufficient factual detail to support a plausible negligence claim against each defendant. Plaintiffs' negligence claim suffers from the same pleading deficiencies as their other claims. It only asserts general allegations against all defendants without identifying specific conduct by each defendant to support a negligence claim and to put defendants on notice of the allegations against them. The court grants plaintiffs leave to amend their negligence claim to cure these deficiencies.

### C.  Plaintiffs' Failure to Plead Fraud with Particularity

Plaintiffs assert two fraud claims in their Complaint:  fraudulent inducement and fraudulent misrepresentation. Defendants argue that plaintiffs have failed to plead these fraud claims with particularity as Fed. R. Civ. P. 9(b) requires. As explained above, a party alleging a fraud claim "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To state a viable claim, a party must allege "[a]t a minimum . . . the who, what, when, where, and how of the alleged fraud and must set forth the time, place, and contents of the false representation, the identity of the party making the false statements[,] and the consequences thereof." *United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 726–27 (10th Cir. 2006) (citations an internal quotation marks omitted).

The court agrees that plaintiffs' fraud claims fall short of the Fed. R. Civ. P. 9(b) pleading standard. Plaintiffs assert general allegations against all defendants without identifying, specifically, "the who, what, when, where, and how" of the fraud. In the fraudulent inducement and fraudulent misrepresentation counts, plaintiffs state that "[d]efendants made numerous, specific representations of fact to [p]laintiffs . . . as set forth more fully at paragraph ¶23 above." Doc. 1 at ¶¶ 61, 69. Paragraph 23 describes the content of certain representations, but it attributes the statements to "defendants" generally and fails to identify, specifically, the party who made the statement. The allegations in paragraph 23 also lack facts about the time or place of the alleged misrepresentations.

Plaintiffs concede in their response that paragraph 23 "does not in every instance provide the exact location, exact date, and names of individuals involved" in the alleged misrepresentations. Docs. 20 at 15, 21 at 15. But plaintiffs contend that the current allegations allege fraud sufficiently and that they cannot provide more factual detail about their fraud claims until they conduct discovery. But, plaintiffs, as the recipients of the alleged misrepresentations, should not require discovery to know the factual detail necessary to assert fraud claims. They already should know the facts about "the who, what, when, where, and how" of the purported frauds to provide the detail Rule 9(b) requires. *See Burnett v. Mortgage Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1240 (10th Cir. 2013) (rejecting plaintiff's need for discovery as a basis for failing to state a plausible claim under *Twombly* because plaintiff "apparently was a recipient of the allegedly false representations" and was "well-positioned to know, for example, the dates they were received and who sent them" and thus "the failure to include any such detail is fatal to the complaint"). Without such facts, plaintiffs' fraud claims fail to satisfy the heightened pleading standard of Rule 9(b). But the court grants plaintiffs leave to amend their Complaint to

plead their fraudulent inducement and fraudulent representation claims with particularity as Fed. R. Civ. P. 9(b) requires.

### IV.   Conclusion

For the reasons explained above, the court grants in part and denies in part defendants' motions to dismiss.  The court also grants plaintiffs leave to file an amended Complaint that provides a sufficient factual basis to state plausible claims against each defendant, as described more fully above.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants The Climate Insurance Agency and The Climate Corporation's Motion to Dismiss (Doc. 8) and defendant North American Elite Insurance Company's Motion to Dismiss (Doc. 10) are granted in part and denied in part.  The court grants defendants' motions to dismiss plaintiffs' breach of express warranty (Count II) and Kansas Consumer Protection Act (Count VII) claims.  The court dismisses those claims with prejudice.  The court denies defendants' motions to dismiss in all other respects.

**IT IS FURTHER ORDERED THAT** plaintiffs are granted leave to file an amended Complaint **within 21 days of the date of this Memorandum and Order**, consistent with the directives contained herein.

**IT IS SO ORDERED.**

**Dated this 30th day of August, 2016, at Topeka, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**
